525 P.2d 945

**James E. FRANKLIN, D.O., Plaintiff-Appellant,**

**v.**

**William F. BLANK, M.D., Defendant-Appellee.**

**No. 1391.**

Court of Appeals of New Mexico.

Aug. 7, 1974.

Robert C. Resta, Albuquerque, for plaintiff-appellant.

William S. Dixon, Rodey, Dickason, Sloan, Akin & Robb, P.A. Albuquerque, for defendant-appellee.

OPINION

LOPEZ, Judge.

The defendant a medical doctor, wrote and published an allegedly defamatory letter reporting alleged incidents of incompetence and unethical and illegal activities by the plaintiff. The plaintiff is a doctor of osteopathy and the coroner of Bernalillo County.

The trial court granted the defendant's motion for summary judgment, holding that the letter was published on an absolutely privileged occasion. Plaintiff appeals. We affirm.

The appeal of plaintiff raises three issues: (1) the matter of privilege or immunity; (2) proof of special damages; (3) the truthfulness of statements in defendant's letter. Although the issue of absolute privilege or immunity is dispositive of this appeal, we shall, nevertheless, answer briefly the other two issues raised by plaintiff's appeal.

*Privilege or Immunity*

The letter stated in part:

"C. D. Milligan, D. O., President
New Mexico Osteopathic Medical Assn.
2130 San Mateo Blvd., N. E.
Albuquerque, New Mexico 87110

"Sandford Kinne, D. O.
Chairman, Ethics Committee
New Mexico Osteopathic Medical Assn.
1517 4th Street, N.W.
Albuquerque, New Mexico

"John B. Roberts, M. D., President
A&B County Medical Association
#3 Medical Arts Square, N.E.
Albuquerque, New Mexico 87102

"Re: J. E. Franklin, D. O.
        Coroner
        Bernalillo County

"Gentlemen:

"I am asking that the New Mexico Osteopathic Medical Association, the Albuqerqe-Bernalillo County Medical Association and the Albuquerque Hospital Council consider independently or jointly, multitudinous complaints about the actions of the Coroner.

"Allegations that range from unmannerly to unethical conduct and to malfeasance have been matters of discussion in professional circles increasingly frequently, this year. With such allegations being bruited, I feel it is time that these professional organizations take official action to prove or disprove their validity."

The letter went on to charge four specific items of misconduct.

Pursuant to this letter, there were several meetings of the Ad Hoc Committee and a report was made. In this opinion we are using the term absolute privilege and absolute immunity interchangeably as announced by this court in Salazar v. Bjork, 85 N.M. 94, 509 P.2d 569 (Ct.App. 1973). Absolute immunity or privilege is a question of law for the trial court to decide. Salazar v. Bjork, supra. Stryker v. Barbers Super Markets, Inc., 81 N.M. 44, 462 P.2d 629 (Ct.App.1969).

In Neece v. Kantu, 84 N.M. 700, 507 P.2d 447 (Ct.App.1973), we held that, ". . . defamation which takes place during the course of [quasi-judicial] labor-grievance-arbitration proceedings . . . ," is absolutely privileged. The policy reasons for according the same privilege to quasi-judicial proceedings involving peer review of alleged professional misconduct are at least equally compelling. The appropriate professional societies, by exercising peer review, can and do perform a great public service by exercising control over those persons placed in a position of public trust but nevertheless unfit to bear that responsibility. It is hardly open to dispute that communications initiating such proceedings are an indispensable part thereof and are to be protected by the privilege. Sinnett v. Albert, 188 Neb. 176, 195 N.W.2d 506 (1972); Ramstead v. Morgan, 219 Ore. 383, 347 P.2d 594 (1959); see Romero v. Prince, 85 N.M. 474, 513 P. 2d 717 (Ct.App.1973) (statements made preliminary to judicial proceeding are absolutely privileged).

The rule in *Sinnett* and *Ramstead* apply to claimed defamatory statements made to a committee on inquiry of the State Bar Association or the grievance committee. The basis of these holdings apply with equal dignity to claimed defamatory statements made to initiate a hearing before an ad hoc committee or a grievance committee of the medical profession. According to Webster's Third New International Dictionary an "ad hoc committee" is one "made, established, acting or concerned with a particular end or purpose." This meaning is consonant with a grievance committee.

■ Defendant repeatedly testified in his deposition that the letter was written to initiate peer review. Plaintiff also testified in his deposition that the letter was written to initiate peer review. This testimony was sufficient to invoke the applicability of the privilege and thereby make a prima facie showing that no material issue of fact existed. "The burden was [then] on the plaintiff, as the party resisting the motion for summary judgment, to come forward and demonstrate that a genuine issue of fact requiring a trial did exist. * * *" Goodman v. Brock, 83 N.M. 789, 498 P.2d 676 (1972).

Plaintiff contends that a question of fact exists as to whether defendant was merely seeking to initiate peer review by transmitting information to the proper authorities, or whether the letter was, "* * * a full spread of defamation intended to be published to the [entire] profession. * * *" The support for this claim is said to be that the letter was sent, "* * * not to a grievance committee where the records are confidential, but to professional organizations that spread the defamatory matter throughout the medical community."

The record *shows* that the defendant published the letter only to the three addressees and Mr. Richard Barr. The record *does* indicate that one or two other persons had copies of the letter, but the date of receipt and the person from whom it was obtained is not shown. Plaintiff and defendant testified that the Ad Hoc Committee were the proper authorities to contact to initiate peer review.

Furthermore, the fact that Dr. Kinne and Dr. Milligan, President of the same association, were named to an Ad Hoc Committee to investigate complaints against the plaintiff indicates that they were proper recipients of the letter. The committee, composed of medical doctors and osteopaths, was formed by the Osteopathic Association and the Albuquerque-Bernalillo County Medical Association.

Informing the county medical association by sending the letter to its President, Dr. Roberts, was undoubtedly within the scope of initiating peer review. The association clearly had power to exercise peer review of osteopaths. Otherwise, it could not have taken part in the establishment of the ad hoc committee. In fact, the defendant testified that the inclusion of osteopaths on the Ad Hoc Committee was a courtesy to them since one of their number was involved.

Sending the letter to the heads of the relevant associations could also be justified since the officers play such a vital role in the entire grievance process. They named this committee. The committee had no real power to enforce sanctions on its own. It merely sent a report making recommendations to the officers who were responsible for taking further action.

Plaintiff vigorously attacks the publication of the letter to Mr. Barr, the Administrator of Presbyterian Hospital. The record discloses, however, that hospitals quite properly exercise peer review over health care professionals practicing therein. In fact, Mr. Barr had already initiated peer review of the plaintiff and the provision of the letter was aimed at assisting him in that process.

The plaintiff has failed to establish that a factual issue exists with regard to his contention that the defendant exceeded the scope of the privilege.

Since defendant's communication occurred on an absolutely privileged occasion, he was entitled to judgment as a matter of law.

*Special damages*

■ There was no evidence of any special damages suffered by plaintiff. We note that plaintiff did not reply to defendant's answer brief regarding plaintiff's nonproof of special damages. In Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the court ruled that special damages cannot be presumed but must be proven. Therefore, we hold

that the failure of plaintiff to prove special damages is fatal to his claim.

### Truthfulness of defendant's letter

■ Truthfulness is a defense to an action for defamation. The record does indicate that the statements made by defendant's letter were substantially, if not, entirely true. We follow the rule announced in Saleeby v. Free Press, 197 Va. 761, 91 S.E.2d 405 (1956), wherein the court said:

> ". . . It is not necessary to prove the literal truth of statements made. Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance, and it is sufficient to show that the imputation is 'substantially' true."

The judgment is affirmed.

It is so ordered.

SUTIN, J., concurs.

HENDLEY, J., dissents.

HENDLEY, Judge (dissenting).

I disagree with the result reached by the majority.

The allowance of an absolute privilege to defame is a serious invasion of an individual's rights. Such a privilege should not be granted in a general investigative proceeding not shown to truly possess the attributes of a quasi-judicial body. Absolute immunity from responsibility without regard to purpose, motive or reasonableness of conduct is, and should be, confined to a very few rather well recognized situations. Stewart v. Ging, 64 N.M. 270, 327 P.2d 333 (1958).

I agree that an absolute privilege should be applied to true grievance proceedings concerned with "peer review." But the evidence in this case establishes that the proceeding was a round table discussion of which no minutes were made. There are no "quasi-judicial" attributes of this Ad Hoc Committee present in the record. To allow an absolute privilege to a proceeding without any vestige of quasi-judicial attributes is to dangerously broaden the privilege.

To institute a form of "peer review" as did defendant was not unreasonable. He was also a member of the medical community. As such he would be a member who was entitled to a qualified privilege. See New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

As to those statements which are not absolutely privileged a qualified privilege applies. New York Times Co. v. Sullivan, supra. As to that privilege plaintiff must prove ". . . that the statement[s] [were] made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, supra.

"Actual malice" being a question of fact the cause should be remanded to the trial court for further proceedings.

Accordingly, I respectfully dissent.