845 P.2d 780

**Lawrence LEYBA, Plaintiff–Appellant,**

**v.**

**Hartmut RENGER, Anesthesia Specialists of Albuquerque, a New Mexico partnership, and St. Joseph Health Care Corp., a New Mexico corporation, Defendants–Appellees.**

**No. 20444.**

Supreme Court of New Mexico.

Oct. 6, 1992.

Freedman, Boyd, Daniels, Peifer, Hollander, Guttman & Goldberg, Joseph

Goldberg, K. Lee Peifer, Raymond G. Sanchez, Albuquerque, for plaintiff-appellant.

Keleher & McLeod, P.A., Russell Moore, Peter H. Johnstone, Thomas C. Bird, Albuquerque, for defendant-appellee Renger.

Miller, Stratvert, Torgerson, & Schlenker, Ranne B. Miller, Albuquerque, for defendant-appellee Anesthesia Specialists.

Sorenson & Schutte, D. James Sorenson, Albuquerque, for defendant-appellee St. Joseph Health Care Corp.

Nicholas Pica, Albuquerque, for defendants-appellees Anesthesia Specialists and St. Joseph Health Care Corp.

## OPINION

FRANCHINI, Justice.

Plaintiff, Dr. Lawrence Leyba, filed suit against Dr. Hartmut Renger, Anesthesia Specialist of Albuquerque (ASA) and St. Joseph Health Care Corporation (St. Joseph) in the United States District Court for the District of New Mexico. This action arises out of defendants' failure to renew plaintiff's credentials in connection with an exclusive agreement between ASA and St. Joseph for anesthesia services and for defamatory statements Dr. Renger allegedly made about Dr. Leyba in the course of investigating Dr. Leyba's application for privileges at three St. Joseph hospitals in Albuquerque. The following question was certified to this Court pursuant to NMSA 1978, Section 34-2-8 (Repl.Pamp.1990) and SCRA 1986, 12–607: Did the enactment of the New Mexico Review Organization Immunity Act (NMROIA), NMSA 1978, §§ 41–9–1 to –7 (Repl.Pamp.1989), abrogate the absolute immunity created by *Franklin v. Blank*, 86 N.M. 585, 525 P.2d 945 (Ct.App.1974)?

We accepted certification on March 23, 1992.

■ We hold that the NMROIA abolished any common-law absolute immunity available to review organization participants prior to its enactment, establishing

instead a qualified immunity. We further hold that the NMROIA controls and supersedes the common law immunity set out in *Franklin*. In *Franklin*, the Court of Appeals found Dr. Franklin absolutely immune from liability in connection with a letter allegedly containing defamatory statements about a Dr. Blank. This letter was written by Dr. Franklin and sent to the appropriate person for initiating peer review proceedings. The Court of Appeals found absolute immunity because the peer review proceedings were quasi-judicial in character, and the communication initiating the proceedings was an indispensable part thereof. *Id.*

Dr. Renger has argued to the United States District Court that the common-law absolute immunity set out in *Franklin* applies here because his activities were related to the St. Joseph credentialing process, which he claims to be a "quasi-judicial" proceeding.[1] We disagree. Any common law immunity involving hospital peer review proceedings that existed under *Franklin* has been superseded by the 1979 enactment of the NMROIA, which established a comprehensive scheme of regulation of hospital peer review proceedings, including the scope of immunity available to members of a review organization. The immunity, however, is not absolute, but qualified.

Section 41–9–3 governing the immunity available to persons providing information to review organizations provides:

No person providing information to a review organization shall be subject to any action for damages or other relief by reason of having furnished such information, unless such information is false and the person providing such information knew or had reason to believe such information was false.

The immunity available to members of review organizations is also limited:

No person who is a member or employee of, who acts in an advisory capacity to or

---

1. We accept for purposes of this opinion the parties' characterization of the credentialing proceeding at St. Joseph as a "quasi-judicial" proceeding. Nothing in this opinion, however, should be taken as expressing any view, one way or the other, on whether a credentialing or "peer review" proceeding in a hospital is "quasi-judicial" in nature.

who furnishes counsel or services to a review organization shall be liable for damages or other relief in any action brought by a person or persons whose activities have been or are being scrutinized or reviewed by a review organization by reason of the performance by the person of any duty, function or activity of such review organization, unless the performance of such duty, function or activity was done with malice toward the person affected thereby. No person shall be liable for damages or other relief in any action by reason for the performance of the person of any duty, function or activity as a member of a review organization or by reason of any recommendation or action of the review organization when the person acts in the reasonable belief that the person's action or recommendation is warranted by facts known to the person or the review organization after reasonable efforts to ascertain the facts upon which the review organization's action or recommendation is made.

§ 41–9–4.

The qualified immunity set out in the NMROIA conflicts with the common-law absolute immunity of *Franklin.* It would be contrary to the intent of the legislature to accord absolute immunity in quasi-judicial proceedings when the hospital review committee members are specifically accorded limited qualified immunity by statute. The statute applies specifically to hospital credentialing proceedings. Section 41–9–2(E) defines "review organization" to include an organization whose

> membership is limited to health care providers and staff ... and which is established by a health care provider which is a hospital ... to gather and review information relating to the care and treatment of patients for the purposes of:
>
> ....
>
> (8) determining whether a health care provider shall be granted authority to provide health care services using the health care provider's facilities or whether a health care provider's privileges should be limited, suspended or revoked.

The NMROIA is a specific legislative declaration that its provisions will control the hospital peer review process. It covers the entire question of health care review organization immunity and privilege. Because this legislation has created a mechanism for regulating the hospital peer review process, the legislation preempted the common law in areas that overlap. *Rutherford v. Darwin,* 95 N.M. 340, 343, 622 P.2d 245, 248 (Ct.App.1980) (holding codification of the law of restrictive endorsements contained in the UCC was sufficiently comprehensive and detailed to exclude common law exceptions not mentioned).

Dr. Renger argues that NMROIA is silent with respect to *Franklin* immunity and, therefore, the legislature intended to leave it intact. Legislative silence, by itself, expresses no intention one way or the other. *Torrance County Mental Health Program, Inc. v. Health & Env't Dep't,* 113 N.M. 593, 598, 830 P.2d 145, 150, (1992).

■ The legislature must have intended its provision for immunity under NMROIA to mean something. When the legislature enacts a new statute, we presume that it intended to establish new law or to change law as it previously existed. *State ex rel. Bird v. Apodaca,* 91 N.M. 279, 284, 573 P.2d 213, 218 (1977). If the legislature believed that the common-law absolute immunity for quasi-judicial proceedings applied to hospital peer review activities, then the provision of the NMROIA conferring only qualified immunity on participants in peer review proceedings shows that it was dissatisfied with the common law regimen and changed it. Alternatively, the legislature may have determined that the common law accorded no immunity to participants in the hospital review process and therefore determined that it would create a qualified immunity for such proceeding by statute. *See Hackethal v. Weissbein,* 24 Cal.3d 55, 154 Cal.Rptr. 423, 426–28, 592 P.2d 1175, 1178–79 (1979) (applying a recently enacted statute extending a qualified privilege where no privilege existed before). In either case, we assume the legislature will not enact useless statutes or amendments. *Apodaca,* 91 N.M. at 284, 573 P.2d at 218.

Dr. Renger encourages us to apply a strict construction of the NMROIA, there-

by favoring the existing common law. *See State v. Bryant,* 99 N.M. 149, 150, 655 P.2d 161, 162 (Ct.App.1982) (applying statutory construction strictly construing statute in derogation of the common law). Although the rule of strict construction appears to favor common law rules over statutory ones, here we will construe the statute in conformity with its obvious meaning, without regard to the previous state of the law because the statute is plain and unambiguous. *Jamison v. Encarnacion,* 281 U.S. 635, 640, 50 S.Ct. 440, 442, 74 L.Ed. 1082 (1930).

Additionally, we find Judge Aldisert's comments on statutory construction instructive in our interpretation of the NMROIA.

> The modern view regards [statutes] as embodying statements of public policy articulated by the most authoritative policy-determining organ of the State. Accordingly, proper judicial construction of a statute requires recognition and implementation of the underlying legislative purpose, a sensitive process which must accommodate society's claims and demands reflected in that purpose. To do this, as Roger Traynor puts it, we need literate, not literal judges, lest a court make a construction within the statutes letter, but beyond its intent.

Ruggero J. Aldisert, *The Judicial Process: Readings, Materials and Cases* § 4, at 170 (photo. reprint 1989) (1976).

The NMROIA reflects a reasoned balance between the competing needs of the public for frank and accurate review of a physician's qualifications and the needs of physicians being credentialed for a fair and impartial review process. This balance is accomplished by affording qualified immunity to both persons who provide information to review organizations and members of review organizations acting within the course and scope of a review proceeding. § 41–9–4.

The reason for limiting peer review immunity to qualified immunity is clear. Malice in the process destroys the integrity of the process, the review in fact is not impartial, and the public interest is not served. The legislature, in enacting the NMROIA,

recognized this potential for abuse. The members of peer review committees are often in direct competition with those being reviewed, and the system has the potential for abuse of the person being reviewed. Possession of hospital privileges, especially in an area such as anesthesiology, is crucial to a physician's success, and a negative decision could be tantamount to excluding a doctor from the profession as a whole. *Bolt v. Halifax Hosp. Medical Ctr.,* 891 F.2d 810, 820 (11th Cir.), *cert. denied,* 495 U.S. 924, 110 S.Ct. 1960, 109 L.Ed.2d 322 (1990). This potential for abuse has been recognized by other courts. *See, e.g., Nurse Midwifery Assocs. v. Hibbett,* 918 F.2d 605, 614 (6th Cir.1990) (noting that anticompetitive concerns are raised when competing physicians are making privilege recommendations concerning a competitor), *cert. denied,* —— U.S. ——, 112 S.Ct. 406, 116 L.Ed.2d 355 (1991); *Memorial Hosp. for McHenry County v. Shadur,* 664 F.2d 1058, 1063 (7th Cir.1981) (pointing out the potential for physicians to use the framework of peer review groups for anticompetitive purposes).

Finally, we have "traditionally afforded relief for wrongs intentionally and maliciously committed...." *Schmitz v. Smentowski,* 109 N.M. 386, 396, 785 P.2d 726, 736 (1990). Sound public policy requires us to construe the NMROIA to abrogate any common-law absolute immunity that may have existed in connection with hospital peer review proceedings prior to its enactment. The public will suffer if the review process becomes an avenue for restricting competition or for promoting personal animus. The integrity of the process is protected by the qualified immunities provided by the NMROIA. We therefore hold that the enactment of the NMROIA abrogated the absolute immunity created by *Franklin* and replaced it with the qualified immunity discussed above.

IT IS SO ORDERED.

MONTGOMERY and FROST, JJ., concur.