MOHINDER P. CHADHA *v.* CHARLOTTE
HUNGERFORD HOSPITAL ET AL.
(AC 22395)

Lavery, C. J., and Foti and Landau, Js.

---

Argued September 26, 2002—officially released May 27, 2003

*Jeffrey R. Babbin,* with whom was *Bethany L. Appleby,* for the appellants (named defendant et al.).

*Mohinder P. Chadha,* pro se, the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendants Charlotte Hungerford Hospital (hospital), Samuel Langer, Michael Kovalchik and Justin O. Schechter appeal[1] from the judgment of the trial court denying their motion for summary judgment. The dispositive issue on appeal is whether the court improperly concluded that the defendants were not entitled to absolute immunity from suit due to the common-law rule that confers such immunity on persons who make statements in connection with quasi-judicial proceedings. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. In February, 1997, the plaintiff, Mohinder P. Chadha, a licensed psychiatrist, was a member of the hospital medical staff with admitting privileges. On March 3, 1997, the hospital contacted the impaired physician program of the Connecticut State Medical Society (medical society)[2] regarding its concerns about the plaintiff's ability to practice medicine with reasonable skill and safety. The department of public health filed a "statement of charges," dated May 13, 1997, against the plaintiff with the Connecticut medical examining

---

[1] The counts of the complaint raising allegations personally against a fifth defendant, Robert Stine, were struck, and he is not an appellant. We refer in this opinion to the hospital, Langer, Kovalchik and Schechter as the defendants.

[2] In 1988, the medical society entered into a participant association protocol agreement (protocol agreement) with the department of health services, now the department of public health. Pursuant to the protocol agreement, the medical society agreed to conduct its impaired physician program in accordance with the department's protocol governing participation of established medical organizations in the implementation of Public Acts 1984, No. 84-148 (protocol), and thereby was approved as a "participant association" by the department. According to the terms of the protocol, a person or organization mandated to report information that appears to show that a physician is or may be unable to practice medicine with reasonable skill or safety may fulfill that obligation by notifying a participant organization.

board (board) requesting that it "revoke or take any other action . . . against the medical license of [the plaintiff] as it deems appropriate and consistent with law." On May 14, 1997, Langer, Kovalchik, Schechter and Robert Stine, physicians licensed to practice in the state of Connecticut, submitted affidavits to the department of public health expressing concerns about the plaintiff's ability to practice psychiatry safely.[3] On May 20, 1997, the board ordered the summary suspension of the plaintiff's license to practice medicine pending a final determination by the board. On November 27, 1997, the hospital submitted a report to the National Practitioner Data Bank pursuant to 42 U.S.C. § 11133 (a). In January, 1998, the board issued a final decision ordering the immediate suspension of the plaintiff's license to practice because he had written ten prescriptions for controlled substances while his license was under suspension.[4]

In July, 2000, the plaintiff filed a twenty-one count amended complaint against the hospital, Langer, Kovalchik, Schechter and Stine. Thereafter, the court struck or dismissed all but five of the counts.[5] The first of the remaining counts sounded in defamation and claimed that the hospital had submitted a false report to the National Practitioner Data Bank. The other four counts alleged that Langer, Kovalchik, Schechter and Stine maliciously had submitted false affidavits to the department of public health. The defendants answered the

---

[3] Langer, Kovalchik and Stine were physicians on staff at the hospital. Schechter was retained by the hospital to perform an independent review of medical records of some of the plaintiff's patients.

[4] The plaintiff's license was to be suspended until the plaintiff entered counseling in accordance with the board's decision and provided a copy of the first session to the board. Once the plaintiff complied with those conditions, he was to be placed on probation for five years.

[5] Stine is not a defendant in any of the remaining counts. The plaintiff's claims with respect to Stine's conduct in one of the remaining counts were directed against the hospital under a theory of respondeat superior.

remaining portions of the plaintiff's amended complaint and asserted several special defenses, including absolute immunity for statements made in connection with quasi-judicial proceedings and qualified immunity pursuant to General Statutes §§ 19a-20[6] and 19a-17b.[7]

On February 7, 2001, the defendants filed a motion for summary judgment. On July 31, 2001, the court granted summary judgment on the claim that the hospital maliciously had submitted a false report to the National Practitioner Data Bank.[8] The court denied summary judgment on claims that the physicians maliciously had submitted false affidavits to the department of public health. In its memorandum of decision, the court con-

[6] General Statutes § 19a-20 provides: "No member of any board or commission subject to the provisions of chapter 368v, chapters 369 to 375, inclusive, 378 to 381, inclusive, 383 to 388, inclusive, 398 and 399, including a member of a medical hearing panel established pursuant to subsection (g) of section 20-8a, and no person making a complaint or providing information to any of such boards or commissions or the Department of Public Health as part of an investigation pursuant to section 19a-14, or a disciplinary action pursuant to section 19a-17, shall, without a showing of malice, be personally liable for damage or injury to a practitioner arising out of any proceeding of such boards and commissions or department. A person making a complaint or providing information to any of such boards or commissions or to the Department of Public Health as part of an investigation pursuant to section 19a-14 or a disciplinary action pursuant to section 19a-17 shall be entitled to indemnification and defense in the manner set forth in section 5-141d with respect to a state officer or employee."

[7] General Statutes § 19a-17b (b) provides: "There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person who provides testimony, information, records, documents, reports, proceedings, minutes or conclusions to any hospital, hospital medical staff, professional society, medical or dental school, professional licensing board or medical review committee when such communication is intended to aid in the evaluation of the qualifications, fitness or character of a health care provider and does not represent as true any matter not reasonably believed to be true."

[8] The court's granting of summary judgment on the first count is not at issue in this appeal. Although the court granted the motion for summary judgment in favor of the hospital on the first count, the hospital remains aggrieved by the denial of that motion with respect to the count against it on a theory of respondeat superior. See footnote 5.

cluded that the defendants were protected by qualified immunity, pursuant to §§ 19a-20 and 19a-17b, and that qualified immunity and not absolute immunity applied to the defendants' submission of affidavits to the department of public health because the qualified immunity statutes, §§ 19a-20 and 19a-17b, abrogate the common-law absolute immunity provided to persons who make statements in connection with quasi-judicial proceedings.

Although the court concluded that the plaintiff had failed to present any proof of actual malice, which is necessary to overcome the qualified immunity provided by §§ 19a-20 and 19a-17b, it nevertheless denied the defendants' motion because it found that they had failed to meet their burden pursuant to Practice Book § 17-45 et seq.[9] More particularly, the court stated that there were no documents submitted with the defendants' motion that addressed the physicians' affidavits and that, by not submitting any proof countering the plaintiff's allegations that the defendants had acted with malice, the defendants failed to meet their burden of submitting supporting documentation establishing that there was no genuine issue of material fact as to the issue of malice. This appeal followed.

On appeal, the defendants claim that the court improperly denied their motion for summary judgment on the remaining four counts. Specifically, they claim that the court improperly determined that they were not protected by absolute immunity for the statements contained in their affidavits. We disagree.

---

[9] Practice Book § 17-45 provides in relevant part that "[a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

Initially, we note that the denial of a motion for summary judgment is not, ordinarily, an appealable final judgment. *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 112, 758 A.2d 452, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000). Where, however, an interlocutory "order or action so concludes the rights of the parties that further proceedings cannot affect them," the interlocutory order may constitute a final judgment. *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000) (en banc), our Supreme Court determined that the "denial of a motion to dismiss, filed on the basis of a colorable claim of sovereign immunity, must be regarded under *Curcio* as an immediately appealable final judgment." Similarly, we regard this denial of a motion for summary judgment, which was filed, inter alia, on the basis of a colorable claim of absolute immunity, as an immediately appealable final judgment under *Curcio*. See id. We therefore will review the defendants' claim that the court improperly concluded that they were not entitled to absolute immunity for the statements contained in their affidavits.

The defendants claim that the court improperly determined that §§ 19a-20 and 19a-17b abrogate the common-law absolute immunity provided to persons who make statements in connection with quasi-judicial proceedings. The defendants in their principal brief assert several arguments in support of their claim that the qualified immunity provided by §§ 19a-20 and 19a-17b does not supplant quasi-judicial absolute immunity and that, in fact, the qualified immunity provided by §§ 19a-20 and 19a-17b and the absolute immunity provided by the common law are concurrent; that is, that "where both an absolute and qualified immunity apply, the absolute immunity trumps the other." We are not persuaded.

We first set forth our standard of review. The defendants' claim involves a determination of the construction to be given §§ 19a-20 and 19a-17b in light of the common-law grant of absolute immunity to those who make statements in connection with quasi-judicial proceedings. Statutory construction presents a question of law, and our review is, therefore, plenary. *State* v. *Marro*, 68 Conn. App. 849, 855, 795 A.2d 555 (2002).

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain

meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning. . . . *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003)." (Emphasis in original; internal quotation marks omitted.) *Grondin* v. *Curi*, 262 Conn. 637, 649–50, 817 A.2d 61 (2003).

In the present case, we are not asked to determine the meaning or applicability of §§ 19a-20 or 19a-17b, as the parties are in agreement that the statutes are applicable to the defendants and that they provide qualified immunity to them. Instead, we are asked to determine the construction to be accorded where the qualified immunity provided by §§ 19a-20 or 19a-17b intersects with the absolute immunity that the common law provides to those who make statements in connection with quasi-judicial proceedings. Specifically, we are asked to determine whether the qualified immunity provided by §§ 19a-20 and 19a-17b abrogates the common-law absolute immunity provided to those who make statements in connection with quasi-judicial proceedings. We conclude that it does.

"Of particular relevance in this case is the . . . principle that [w]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought

within its scope." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003).

Turning to the merits of the issue before us, we begin our analysis with the relevant statutory language. Section 19a-17b (b) provides in relevant part: "There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person who provides testimony, information . . . or conclusions to any hospital, hospital medical staff . . . professional licensing board or medical review committee when such communication is intended to aid in the evaluation of the qualifications, fitness or character of a health care provider *and does not represent as true any matter not reasonably believed to be true.*" (Emphasis added.) Section 19a-20 provides in relevant part: "No member of any board . . . subject to the provisions of chapter [370] . . . and no person making a complaint or providing information to any of such boards . . . or the Department of Public Health as part of an investigation pursuant to section 19a-14, or a disciplinary action pursuant to section 19a-17, shall, *without a showing of malice*, be personally liable for damage or injury to a practitioner arising out of any proceeding of such boards . . . or department. . . ." (Emphasis added.)

After examining the plain language and legislative histories[10] of §§ 19a-20 and 19a-17b, we conclude that

[10] Although the legislative history of General Statutes §§ 19a-17b and 19a-20 is relatively bereft on the particular statutory provisions at issue, what little there is supports the conclusion that the legislature meant the statutes to provide a qualified immunity to those whose conduct or status places them within the purview of one of these statutory sections. Representative Robert G. Gilligan, summarizing what would eventually become subsections (b) and (c) of § 19a-17b before the House of Representatives stated: "This amendment extends immunity from civil liability to any person who provides testimony or information to a medical review committee for the purpose of evaluating the qualifications, fitness or character of a health care provider if the information does not represent as true any matter not reasonably believed to be true. Section 3 of the Amendment extends immunity from civil liability to members of medical review committees for any actions

the language of those statutes unambiguously and clearly expresses the legislature's will that those whose conduct or status places them within the purview of either of those statutes should be provided with protection from liability, but that that protection should be limited or qualified and not absolute. We therefore conclude that where the common-law grant of absolute immunity provided to those who make statements in connection with quasi-judicial proceedings would overlap with the qualified immunity provided by § 19a-20 or § 19a-17b, the statutes abrogate the common law.

In further support of our conclusion is the fact that in 1994, the legislature amended § 19a-20 to provide in relevant part: "A person making a complaint or providing information to any of such boards or commissions or to the Department of Public Health as part of an investigation pursuant to section 19a-14 or a disciplinary action pursuant to section 19a-17 shall be entitled to indemnification and defense in the manner set forth in section 5-141d[11] with respect to a state officer or

taken if the actions were taken without malice and [in] the reasonable belief that the action was warranted." 19 H.R. Proc., Pt. 6, 1976 Sess., p. 2382.

[11] General Statutes § 5-141d provides in relevant part: "(a) The state shall save harmless and indemnify any state officer or employee, as defined in section 4-141, and any member of the Public Defender Services Commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

"(b) The state, through the Attorney General, shall provide for the defense of any such state officer, employee or member in any civil action or proceeding in any state or federal court arising out of any alleged act, omission or deprivation which occurred or is alleged to have occurred while the officer, employee or member was acting in the discharge of his duties or in the scope of his employment, except that the state shall not be required to provide for such a defense whenever the Attorney General, based on his investigation of the facts and circumstances of the case, determines that it would be inappropriate to do so and he so notifies the officer, employee or member in writing. . . ."

employee." See Public Acts 1994, No. 94-174, § 2. That amendment further evinces the legislature's intent to provide only a qualified immunity to those who fall within the purview of those statutes. The amendment applies to persons who make a complaint or provide information as part of an investigation pursuant to General Statutes § 19a-14 or a disciplinary action pursuant to § 19a-17.[12] We find it difficult to imagine a person to whom the 1994 amendment to § 19a-20 would apply, who would not also be considered to have made the statements at issue in connection with a quasi-judicial proceeding.[13] "[W]e presume that the legislature had a

---

[12] The 1994 amendment provides indemnification and defense to the same people to whom the rest of General Statutes § 19a-20 applies except that the amendment does not provide indemnification and defense to *members* of the various boards, commissions or medical hearing panels, all of which entities' members are provided with qualified immunity by § 19a-20.

[13] The label quasi-judicial is applied to a fairly broad spectrum of proceedings that would appear to us to include almost any complaints or proceedings before the various boards and commissions referenced in General Statutes § 19a-20. "[I]n determining whether a proceeding is quasi-judicial . . . our review is not limited to the label of the proceeding, but includes a review of the proceeding itself. The principal factors to be considered are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties. . . . Further, quasi-judicial is defined as the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." (Internal quotation marks omitted.) *Preston* v. *O'Rourke*, 74 Conn. App. 301, 309–10, 811 A.2d 753 (2002); see also *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986) ("[J]udicial proceeding to which the immunity attaches . . . includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. . . . It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character. . . . This privilege extends to every step of the proceeding until final disposition. . . . [L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during adminis-

purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 263 Conn. 1, 16, 818 A.2d 1 (2003). Had the legislature intended for those who are provided qualified immunity by § 19a-20 to be provided with absolute immunity just because their statements were made in connection with a quasi-judicial proceeding, it would have no reason to provide those very same people with indemnification and defense. Instead, it is apparent that the 1994 amendment is in keeping with the legislature's intent to provide only a qualified immunity to those whose status or conduct places them within the purview of either of those statutes.

We can presume that the legislature provided only a qualified immunity to those covered by the statutes for a reason; it wanted to discourage individuals who otherwise would be protected by those statutes from acting out of an improper motive. See, e.g., *Leyba* v. *Renger*, 114 N.M. 686, 845 P.2d 780 (1992). In *Leyba*, the court stated: "The members of peer review committees are often in direct competition with those being reviewed, and the system has the potential for abuse of the person being reviewed. Possession of hospital privileges . . . is crucial to a physician's success, and a negative decision could be tantamount to excluding a doctor from the profession as a whole. . . . This potential for abuse has been recognized by other courts. See, e.g., *Nurse Midwifery Associates* v. *Hibbett*, 918 F.2d 605, 614 (6th Cir. 1990) (noting that anticompetitive concerns are raised when competing physicians are making privilege recommendations concerning a competitor) [modified on other grounds, 927 F.2d 904], cert. denied, 502 U.S. 952, 112 S. Ct. 406, 116 L. Ed. 2d 355 (1991); *Memorial Hospital for McHenry County* v. *Sha-*

trative proceedings which are quasi-judicial in nature." [Citations omitted; internal quotation marks omitted.]).

*dur*, 664 F.2d 1058, 1063 (7th Cir. 1981) (pointing out the potential for physicians to use the framework of peer review groups for anticompetitive purposes).'' (Citations omitted.) *Leyba* v. *Renger*, supra, 689. Had the legislature wanted to provide absolute immunity to those who fall within the ambit of §§ 19a-20 or 19a-17b, it could have done so. It chose not to.

The defendants, nevertheless, assert several arguments in support of their claim that §§ 19a-20 and 19a-17b do not abrogate the common-law absolute immunity provided to persons who make statements in connection with quasi-judicial proceedings. They first argue, in their principal brief, that certain principles of statutory construction support their position that it would be improper ''to reduce the [defendants'] protection by removing the blanket of [absolute] immunity simply because qualified immunity might also apply.''[14] Although the principles of construction cited by the defendants are perfectly valid as principles of construction, we do not find them to be controlling in this case. Instead we are persuaded by the principle that ''[t]he body of our common law, which serves to supplement

[14] The defendants cite *Colon* v. *Board of Education*, 60 Conn. App. 178, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000), for the proposition that ''[a] statute should not be construed as altering the common law rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express''; (internal quotation marks omitted) id., 183–84; and that ''statutes are not readily interpreted as abrogating common law rights.'' (Internal quotation marks omitted.) Id., 184.

Although the principles cited by the defendants are perfectly valid, we do not view our decision in this case as being in any way violative of those principles. Indeed we are not altering the common-law rule further than the words of the statute import, nor are we ''making any innovation upon the common law which the statute does not fairly express.'' (Internal quotation marks omitted.) Id., 183–84. Last, although we have determined that General Statutes §§ 19a-17b and 19a-20 abrogate quasi-judicial absolute immunity, we are mindful that ''statutes are not readily interpreted as abrogating common law rights.'' (Internal quotation marks omitted.) *Colon* v. *Board of Education*, supra, 60 Conn. App. 184.

the corpus of statutory enactments, is powerless to abrogate the latter, either in whole or in part. Validly expressed legislative will must always control over contrary notions of the unwritten law. When in pari materia, statutory law and the precepts of either preexisting or after-declared common law are to be construed together as one consistent and harmonious whole." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC,* 260 Conn. 691, 717, 802 A.2d 731 (2002).

The defendants also cite several cases in support of their position that "where both an absolute immunity and qualified immunity apply, the absolute immunity trumps the other." Most of the cases cited by the defendants are factually inapposite to the case before us because they do not involve the situation where quasi-judicial immunity overlaps with a statutory grant of qualified immunity.[15] The defendants do, however, cite *Attaya* v. *Shoukfeh,* 962 S.W.2d 237 (Tex. App. 1998), a Texas case that is analogous to this case and does support their position. In that case, the Texas Court of Appeals determined that "the qualified immunity provisions of the [Texas] Medical Practice Act does not repeal, destroy, diminish or supercede common law absolute immunity." Id., 239. In its opinion, the court reasoned that "[q]ualified immunity alone, whether by statute or common law, does not adequately protect the party informant's interest or promote the board's

---

[15] Among the cases cited by the defendants are two federal District Court cases that are factually similar to this case and apply Connecticut law. See *Fink* v. *Magner,* 988 F. Sup. 74, 82–83 (D. Conn. 1997); *Victoria* v. *O'Neill,* 688 F. Sup. 84, 90–92 (D. Conn. 1988). Both cases held that the defendants were entitled to absolute immunity. In neither case, however, did the court even mention the existence of General Statutes §§ 19a-20 or 19a-17b. Thus, those courts did not determine the issue now before us, and, furthermore, it is not apparent whether they were even aware that our legislature has chosen to provide a qualified immunity to people whose status or conduct places them within the purview of §§ 19a-20 or 19a-17b.

government function," Id., 239–40. The court, in essence, based its decision on policy reasons. While we recognize that there is a policy reason for granting individuals absolute immunity for statements made in connection with quasi-judicial proceedings; see *Preston* v. *O'Rourke*, 74 Conn. App. 301, 311, 811 A.2d 753 (2002); see also *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986); we disagree with the Texas Court of Appeals because we are not convinced that the general policy *announced by the courts* of granting absolute immunity to those who make statements in connection with quasi-judicial proceedings should overcome *the legislature's validly expressed will*, which is to provide a qualified, but not absolute, immunity to those who fall within the purview of §§ 19a-20 or 19a-17. See *Thibodeau* v. *Design One Group Architects, LLC*, supra, 260 Conn. 713–14, 717. Moreover, §§ 19a-20 and 19a-17b are, themselves, an expression of the public policy that exists in this state. See id., 706. The statutes express a legislative policy decision to accord certain individuals, whose status or conduct places them within the purview of one or both of those statutes, with a qualified immunity. See id., 708. We are not free to disregard the legislative policy determination contained in these statutes. See id. ("we may not 'ignore [a] statement of public policy that is represented by a relevant statute' ").

We note that the Supreme Court of New Mexico's decision in *Leyba* v. *Renger*, supra, 114 N.M. 686, supports our conclusion here. In that case, the court was asked to determine whether the enactment of the New Mexico Review Organization Immunity Act (NMROIA), which provided a qualified immunity to members of certain peer review organizations and to persons providing information to those organizations, abrogated the quasi-judicial absolute immunity created by *Franklin* v. *Blank*, 86 N.M. 585, 525 P.2d 945 (N.M. App. 1974). The court held that "[t]he qualified immunity set out

in the NMROIA conflicts with the common-law absolute immunity of *Franklin*. It would be contrary to the intent of the legislature to accord absolute immunity in quasi-judicial proceedings when the hospital review committee members are specifically accorded limited qualified immunity by statute." *Leyba* v. *Renger*, supra, 782. We agree with the reasoning of the Supreme Court of New Mexico.

The defendants finally argue that §§ 19a-20 and 19a-17b apply to a broader range of conduct than is protected by quasi-judicial absolute immunity in that §§ 19a-20 and 19a-17b ostensibly cover certain conduct and activities that would not be considered quasi-judicial in nature,[16] and, thus, the "correct analysis is that the reference to 'malice' in [§ 19a-20] provides qualified immunity only where absolute immunity did not already attach to a defendant's actions." We disagree.

We are again guided by the principles that the legislative will must control over contrary notions of the common law and that the common law may not abrogate statutory enactments, either in whole or in part. *Thibodeau* v. *Design Group One Architects, LLC*, supra, 260 Conn. 717. In the present case, the legislature expressed its will that those who fall within the ambit of §§ 19a-20 or 19a-17b should be protected by a qualified immunity. Although it is apparent that the legislature wanted to provide those who fall within the parameters of §§ 19a-20 or 19a-17b with considerable protection,[17] it is also

---

[16] Although the defendants argue that General Statutes §§ 19a-17b and 19a-20 apply to conduct and activities that would not be considered quasi-judicial in nature, we believe that almost any conduct protected by § 19a-20 would be considered to have occurred in connection with a quasi-judicial proceeding. See footnote 12.

[17] See *Woodcock* v. *Journal Publishing Co.*, 230 Conn. 525, 546, 646 A.2d 92 (1994) (proving malice is difficult), cert. denied, 513 U.S. 1149, 115 S. Ct. 1098, 130 L. Ed. 2d 1066 (1995); General Statutes § 19a-20 (providing indemnification, defense to certain individuals bringing complaints or providing information to boards, commissions described in statute).

apparent that the legislature did not want to foreclose a plaintiff from bringing an action if the plaintiff could overcome the burden specified in those statutes.

We conclude, therefore, that where the statutory immunity provided by §§ 19a-20 or 19a-17b overlaps with the common-law provision of absolute immunity to those who make statements in connection with quasi-judicial proceedings, the statutes are in derogation of the common law and must prevail over the common-law grant of absolute immunity.

In addition to the defendants' claim that the court improperly determined that they were not entitled to absolute immunity, the defendants also claim that the court improperly determined that they were not entitled to summary judgment on the basis of qualified immunity. Specifically, the defendants argue (1) that the court improperly determined that they were required to rebut the plaintiff's allegations that they had acted maliciously in publishing their affidavits, (2) that the plaintiff bore the burden of providing a factual basis for his contention that the defendants had acted with malice and (3) that because, as the court found, the plaintiff had failed to meet his burden of providing a factual basis for his contention that the physicians had acted with malice, the defendants were entitled to summary judgment.

As we have stated previously, the denial of a motion for summary judgment is an interlocutory order and, as such, it is not ordinarily an appealable final judgment. *Westbrook* v. *ITT Hartford Group, Inc.*, 60 Conn. App. 767, 775, 761 A.2d 242 (2000); *Young* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 60 Conn. App. 112. Because the court's denial of the defendants' motion for summary judgment, on the ground that under our rules of practice they did not meet their burden of submitting supporting documentation establishing that there was

no genuine issue of material fact, did not "[terminate] a separate and distinct proceeding" or "so [conclude] the rights of the parties that further proceedings cannot affect them"; *State* v. *Curcio*, supra, 191 Conn. 31; we do not address the defendants' claim, as the denial of summary judgment on those grounds is not an appealable final judgment. See id.; see also *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 33–34, 694 A.2d 1246 (1997).

The judgment is affirmed.

In this opinion FOTI, J., concurred.

LANDAU, J., concurring in part and dissenting in part.

I

For reasons of public policy, I respectfully dissent from the majority's opinion that the defendants here are provided with only qualified immunity in quasi-judicial proceedings involving health care providers.

I agree with the reasoning of the Texas Court of Appeals in *Attaya* v. *Shoukfeh*, 962 S.W.2d 237 (Tex. App. 1998), in which the court stated that "the qualified immunity provisions of the [Texas] Medical Practice Act [do] not repeal, destroy, diminish or supercede common law absolute immunity. Qualified immunity alone, whether by statute or common law, does not adequately protect the party informant's interest or promote the board's government function. In this connection, absolute immunity is necessary to encourage parties to fully utilize the governmental grievance process without fear or reprisal. Likewise, the mere threat of retaliatory lawsuits, however meritless, is sufficient to discourage physicians from complying with [the statute]." Id., 239–40.

As demonstrated by the procedural history of this case, qualified immunity comes too late in the day to ward off the chilling effect the threat of a lawsuit can

have in the peer review process or on those who complain about physicians who are not or may not be able to provide competent medical care. If in time qualified immunity saves the day for the defendants and they are indemnified for their legal defense, it will come after years of litigation, involving time and stress on the parties and many judicial resources. Here, qualified immunity is as good as no immunity.

The position taken by the majority is a paradox in the face of absolute immunity afforded in other contexts where the courts of this state continue to recognize the protection it affords in quasi-judicial proceedings. See *Petyan* v. *Ellis*, 200 Conn. 243, 247–48, 510 A.2d 1337 (1986) (information supplied by employer on fact-finding supplement form of employment security division of state labor department entitled to absolute immunity); *Preston* v. *O'Rourke*, 74 Conn. App. 301, 309–15, 811 A.2d 753 (2002) (arbitration is quasi-judicial proceeding and testimony entitled to absolute immunity); *Field* v. *Kearns*, 43 Conn. App. 265, 273, 682 A.2d 148 ("bar grievants are absolutely immune from liability for the content of any relevant statements made during a bar grievance proceeding"), cert. denied, 239 Conn. 942, 684 A.2d 711 (1996).

Since *Petyan*, our Supreme Court and this court have held that witnesses, complainants and grievants enjoy absolute immunity in labor arbitrations and grievances filed against members of the bar. While I acknowledge that labor arbitrations and bar grievances generally involve matters of real and personal property, employment opportunity and large sums of money, to me, those matters pale by comparison with the life and death issues with which physicians and other health care professionals are concerned. It defies common sense that our law will protect a bar grievant or a witness in a labor dispute to prevent the chill of future litigation in the quest for the truth, but it will not provide the same

degree of protection for health care providers during the course of a peer review or individuals filing complaints with the department of public health. By relying, in part, on the reasoning in *Nurse Midwifery Associates* v. *Hibbett*, 918 F.2d 605, 614 (6th Cir. 1990), modified on other grounds, 927 F.2d 904, cert. denied, 502 U.S. 952, 112 S. Ct. 406, 116 L. Ed. 2d 355 (1991), that physicians and health care providers who serve on peer review committees are often in competition with those being reviewed, does the majority assume that labor grievants, lawyers and others who submit their disputes to arbitration are not in competition with one another?

For the foregoing reasons, I respectfully dissent.

## II

Although I believe that the defendants' first claim is controlling of this appeal, I agree with the majority's conclusion regarding the defendants' claim that the court improperly denied their motion for summary judgment because the burden was on the plaintiff to demonstrate a genuine issue of material fact as to malice. I agree that the basis of this claim is not a final judgment and that the claim is not properly before this court. See *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983).