EUGENE P. MERCER *v.* EDWARD A. BLANCHETTE
(AC 33034)

Gruendel, Beach and Bishop, Js.

Submitted on briefs October 28, 2011—officially released January 17, 2012

*Eugene P. Mercer*, pro se, the appellant (plaintiff), filed a brief.

*George Jepsen*, attorney general, and *Ann E. Lynch*, assistant attorney general, filed a brief for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Eugene P. Mercer, appeals from the judgment of the trial court dismissing his claims against the defendant, Edward A. Blanchette, on the ground that they are barred by the doctrine of absolute immunity. The plaintiff also claims that the court improperly denied his motion to seal his file or, in the alternative, for permission to use a pseudonym. We disagree with the plaintiff on both claims, and, accordingly, affirm the judgment of the trial court.

The following undisputed factual and procedural history is relevant to the plaintiff's claims on appeal. On June 2, 2010, the plaintiff, an inmate at the Osborn Correctional Institution, commenced this action against the defendant, who is the clinical director for the department of correction. In addition to his role as clinical director, the defendant, among others, was appointed by the federal District Court as a member of a three person panel, the Agreement Monitoring Panel (panel), to monitor compliance with the consent judgment rendered in *Doe* v. *Meachum*, United States District Court,

Docket No. H88-562 (PCD) (JGM) (D. Conn. November 2, 1990). The consent judgment directs certain education and treatment guidelines regarding inmates infected with the acquired immune deficiency syndrome (AIDS) and the human immunodeficiency virus (HIV), and vests the panel with certain responsibilities and authority regarding the enforcement of its provisions. Specifically, the panel is tasked with devising procedures for monitoring the judgment and providing periodic reports to the parties and the court. In fulfilling its mandate, the judgment anticipates that the panel will conduct on-site inspections of correctional facilities and review records "as [it] deem[s] necessary" in order to perform its monitoring function. The judgment states, as well, that "[d]uring [its] inspection, the panel shall be permitted to conduct interviews with HIV-infected inmates" and shall be provided with any new policies or procedures that the department of correction may issue. The panel has access to "all policies, records, procedures and files at each [correctional] institution relevant to medical and mental health treatment of HIV-infected inmates, as well as access to all staff and consulting physicians with respect to such medical and mental health treatment." The panel's reports set forth the panel's findings of compliance and noncompliance with the consent judgment. If the panel determines noncompliance, it must issue a report to the parties concerning the claim and make recommendations to remedy it. If remedial action cannot be resolved between the panel and the parties, a party may request a status hearing with a settlement judge or magistrate. If the issue cannot be resolved by a settlement judge or magistrate, the matter will be referred to the trial judge for adjudication. At that proceeding, panel members may be called as witnesses by a party or the judge.

On January 27, 2010, there was a panel meeting regarding complaints of alleged noncompliance with

the consent judgment. At that meeting, the defendant allegedly stated that he found it difficult to credit the plaintiff's claims because the plaintiff repeatedly filed actions demanding treatment; the plaintiff had deliberately infected another inmate with HIV; and the plaintiff had demanded experimental treatment with human growth hormone. On the basis of those statements, the plaintiff filed, on June 2, 2010, the present action against the defendant claiming libel per se, defamation by innuendo, slander, false light invasion of privacy, negligent infliction of emotional distress and retaliation.

On July 12, 2010, the defendant filed a motion to dismiss the plaintiff's complaint on the ground, inter alia, that the claims focused on statements allegedly made by the defendant at a federal court monitoring panel meeting, and, consequently, the defendant was entitled to absolute immunity from the plaintiff's claims. On July 26, 2010, the plaintiff filed a motion to seal his file or for permission to use a pseudonym. On December 8, 2010, the court issued memoranda of decision granting the defendant's motion to dismiss[1] and denying the plaintiff's motion to seal his file or for permission to use a pseudonym. This appeal followed.

I

The plaintiff first claims that the court improperly afforded the defendant absolute immunity because the

[1] The court noted, in its decision, that the issue of immunity typically is raised by way of a special defense and determined either at trial or on summary judgment. The court indicated that, in this instance, it was addressing the issue of immunity on a motion to dismiss due to its desire to avoid interfering with the concurrent federal proceedings. Although the plaintiff challenges on appeal the court's determination on the issue of comity, he does not indicate how the court's ruling in that regard affects his substantive claims on appeal. For instance, the plaintiff does not claim that the court followed an improper procedure or improperly deprived him of an evidentiary hearing; nor does the plaintiff contend that the court's examination of the defendant's claim of absolute immunity was premature. Accordingly, because the issue of comity relates only to the timing of the trial court's decision and its choice of procedure, but not to its conclusion

meeting at which the defendant allegedly made the subject comments was not a judicial or a quasi-judicial proceeding and, even if it was, the alleged statements were not made in the course of the proceeding, nor were they related to the subject matter of that proceeding. We are not persuaded.

"Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts. . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [granting] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Woodtke*, 130 Conn. App. 734, 738, 25 A.3d 699 (2011).

"In addition, the determination of whether a [proceeding] constitutes a [judicial or] quasi-judicial proceeding is a question of law over which our review is plenary. Within this limitation, however, whether a particular proceeding is [judicial or] quasi-judicial in nature, for the purposes of triggering absolute immunity, will depend on the particular facts and circumstances of each case." *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 83–84, 856 A.2d 372 (2004).

"It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for the publication of the privileged statement even if the statement is false and malicious." (Citation omitted; internal quotation marks omitted.) *Gallo* v. *Barile*, 284 Conn. 459, 465–66, 935 A.2d 103 (2007).

regarding immunity, we focus only on whether the court correctly determined that the defendant enjoys absolute immunity in this case.

"[L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is quasi-judicial in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition. . . .

"We must first determine whether the proceedings in this case were [judicial or] quasi-judicial in nature. The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes, for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Bonney*, 221 Conn. 549, 565–66, 606 A.2d 693 (1992).

In *Kelley*, our Supreme Court held that statements made by persons requesting the state board of education to investigate a local teacher were absolutely privileged. Id., 571. There, the source of the allegedly defamatory statements was a letter written by members of a local school board requesting an investigation into acts of alleged wrongdoing by a teacher in the local board's district. Id., 554–55. The court concluded that the decertification proceedings before the state board of education were quasi-judicial in nature and that any statements made as a requisite step in those proceedings were absolutely privileged. Id., 571. In arriving at its determination, the *Kelley* court delineated several

factors "that assist in determining whether a proceeding is quasi-judicial in nature. Among them are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties. . . . Further, it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." (Citation omitted.) Id., 567; see also *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 88 (investigation by police department's internal affairs division constituted quasi-judicial proceeding, thereby affording absolute immunity to citizen complainant whose claim had given rise to investigation); *Petyan* v. *Ellis*, 200 Conn. 243, 252, 510 A.2d 1337 (1986) (absolute privilege afforded to letter sent to employment security division of state labor department regarding reasons employee was terminated); *Preston* v. *O'Rourke*, 74 Conn. App. 301, 312, 811 A.2d 753 (2002) (arbitration entered into pursuant to collective bargaining agreement constituted quasi-judicial proceeding).

Here, the operation of the panel appears to fall within some, but not all, of the parameters suggested by *Kelley*. In regard to the panel's functions, it can reasonably be inferred that the panel hears and ascertains facts and that, in doing so, it exercises discretion and judgment. It does not appear from the terms of the consent judgment, however, that the panel has the authority to make binding orders affecting the personal or property rights of individuals or to enforce decisions or to impose penalties.

If our analysis was limited to only those six specifically enumerated factors set forth in *Kelley*, we might

be constrained to find that the panel does not act in a quasi-judicial manner. By the court's language in *Kelley*, however, those factors are not exclusive; nor did the court in *Kelley* purport to cover every circumstance in which quasi-judicial immunity is appropriate. In assessing claims of quasi-judicial immunity, we also must consider, in accordance with *Kelley*, "whether there is a sound public policy reason for permitting complete freedom of expression that a grant of absolute immunity provides." *Kelley* v. *Bonney*, supra, 221 Conn. 567. *Kelley* also must be read in light of the Supreme Court's more recent opinion in *Carrubba* v. *Moskowitz*, 274 Conn. 533, 877 A.2d 773 (2005), in which the court appears to have asserted a somewhat different basis for upholding the immunity of a quasi-judicial officer than expressed in *Kelley*. In *Carrubba*, the court concluded that attorneys appointed by the court to represent minor children are entitled to quasi-judicial immunity for their actions in performing their duties in that role because the performance of those functions is integral to the judicial process. Id., 547–48. In so concluding, the court cited to several cases in which individuals have been afforded quasi-judicial immunity based on the fact that their role is integral to the judicial process. See, e.g., *Babcock* v. *Tyler*, 884 F.2d 497 (9th Cir. 1989) (court-appointed social worker), cert. denied, 493 U.S. 1072, 110 S. Ct. 1118, 107 L. Ed. 2d 1025 (1990); *Moses* v. *Parwatikar*, 813 F.2d 891 (8th Cir.) (court-appointed psychologist), cert. denied, 484 U.S. 832, 108 S. Ct. 108, 98 L. Ed. 2d 67 (1987); *Demoran* v. *Witt*, 781 F.2d 155 (9th Cir. 1986) (probation officer); *Boullion* v. *McClanahan*, 639 F.2d 213 (5th Cir. 1981) (bankruptcy trustee); *T & W Investment Co.* v. *Kurtz*, 588 F.2d 801 (10th Cir. 1978) (court-appointed receiver); *Burkes* v. *Callion*, 433 F.2d 318 (9th Cir. 1970) (court-appointed medical examiner), cert. denied, 403 U.S. 908, 91 S. Ct. 2217, 29 L. Ed. 2d 685 (1971).

Here, similar to *Carrubba* and the cases on which the trial court relied in reaching its conclusion, the defendant acted as a member of the panel which, in turn, was performing a monitoring and reporting function integral to the judicial process of enforcing the provisions of the consent judgment. The defendant was appointed to the panel by the federal court and his performance in that role is specifically prescribed by the terms of the consent judgment. The judgment sets forth the manner in which the panel investigates issues of compliance, affording it access to various otherwise confidential documents and the opportunity to conduct inspections at the correctional facilities. The court does not get involved in the enforcement of the judgment until and unless the panel makes a finding of noncompliance, makes recommendations to the parties on how to remedy the issues and the resolution of that issue fails. In short, enforcement of the judgment is entirely reliant on the panel's monitoring and reporting function, a role that is undoubtedly integral to the judicial process. Thus, following the rationales of *Kelley* and *Carrubba*, and the public policy they espouse, we conclude that because the work of the panel is integral to the judicial process of enforcing the consent judgment and there is a strong public policy reason for encouraging freedom of expression in that process, the workings of the panel should be extended quasi-judicial immunity.

Having concluded that the statements of the defendant were made in the context of a judicial or quasi-judicial process, we must next determine whether the alleged defamatory statements were made in the course of that proceeding and whether they related to its subject matter. See *Kelley* v. *Bonney*, supra, 221 Conn. 571. "In making [the] determination [of whether a particular statement is made in the course of a judicial proceeding], the court must decide as a matter of law whether the . . . statements [at issue] are sufficiently relevant to the issues involved in a proposed or ongoing judicial

[or quasi-judicial] proceeding, so as to qualify for the privilege. The test for relevancy is generous . . . ." (Internal quotation marks omitted.) *Gallo* v. *Barile*, supra, 284 Conn. 467. Because the defendant's statements in this case, whether true or not, related to the subject matter of the proceeding in that the defendant was expressing his basis for questioning the plaintiff's credibility, we cannot conclude that the court improperly determined that the statements were made in the course of the proceeding. Accordingly, we conclude that the court properly dismissed the plaintiff's claims on the basis of absolute immunity.

## II

The plaintiff also claims that the court improperly denied his motion to seal his file or for permission to use a pseudonym. We disagree.

"We review a trial court's decision granting or denying a motion to seal to determine whether, in making the decision, the court abused its discretion. . . . Inherent . . . in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . When reviewing a trial court's exercise of the legal discretion vested in it, our review is limited to whether the trial court correctly applied the law and reasonably could have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Vargas* v. *Doe*, 96 Conn. App. 399, 408–409, 900 A.2d 525, cert. denied, 280 Conn. 923, 908 A.2d 546 (2006).

"The question the court first must address when considering [a motion to proceed anonymously] is whether, given the presumption of openness in all judicial proceedings, the [party] has a substantial privacy right which outweighs the customary . . . presumption of openness in judicial proceedings. . . . A [party's] desire to avoid economic and social harm as well as embarrassment and humiliation in his professional and social community is normally insufficient to permit him

to appear without disclosing his identity. . . . The most compelling situations [for granting a motion to proceed anonymously] involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the [party's] identity. . . . There must be a strong social interest in concealing the identity of the [party]." (Citation omitted; internal quotation marks omitted.) Id., 410–11.

Here, the plaintiff contended that his file should be sealed or, in the alternative, that he should be allowed to proceed anonymously because of the sensitive nature of the fact that he is infected with HIV and because he is in danger of physical harm as a result of the defendant's allegation that the plaintiff deliberately infected another inmate with HIV. The plaintiff did not, however, file his motion until approximately six weeks after he filed the complaint in this matter. Additionally, as the trial court noted, the plaintiff's HIV status was already in the public domain, having been made public by the plaintiff's filing numerous actions regarding his condition in which he has not sought to seal the files or to proceed anonymously. On that basis, it would strain the bounds of credulity to conclude that this particular plaintiff maintains a privacy interest in his HIV status. Accordingly, we cannot conclude that the court improperly denied the plaintiff's motion to seal his file or for permission to use a pseudonym.

The judgment is affirmed.

In this opinion the other judges concurred.