******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VILLAGES, LLC *v.* LORI LONGHI
(AC 36844)

Lavine, Sheldon and Mullins, Js.

*Argued November 19, 2015—officially released July 5, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Wiese, J.)

*Gwendolyn S. Bishop*, with whom was *P. Timothy
Smith*, for the appellant (plaintiff).

*Kristan M. Maccini*, for the appellee (defendant).

*Opinion*

LAVINE, J. Our Supreme Court said of zoning laws and commissions: "We must remember that the machinery of government would not work if it were not allowed a little play in its joints. . . . Nowhere is this more applicable than to zoning ordinances; the saving elasticity is mainly afforded through boards of adjustment. Much depends upon the skill, sound judgment and probity of the members. It is essential to their functions that they be invested with liberal discretion. *They are accorded the benefit of a presumption that they act fairly, with proper motives and upon valid reasons, and not arbitrarily.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *St. Patrick's Church Corp.* v. *Daniels*, 113 Conn. 132, 139, 154 A. 343 (1931).

The plaintiff, Villages, LLC, appeals from the judgment of the trial court dismissing its complaint against the defendant, Lori Longhi, a member of the Enfield Planning and Zoning Commission (commission), on the ground that the defendant is absolutely immune from liability in this action under the litigation privilege. The plaintiff claims that the court erred in ruling that the defendant is absolutely immune from suit in this action under the litigation privilege because the conduct alleged does not implicate that privilege, but instead is governed by the provisions of General Statutes § 52-557n (c).[1] We agree with the plaintiff and, therefore, reverse the judgment of the trial court.

The parties appear before this court for a second time. The underlying facts previously were set out in *Villages, LLC* v. *Enfield Planning & Zoning Commission*, 149 Conn. App. 448, 89 A.3d 405 (2014), appeals dismissed, 320 Conn. 89, 127 A.3d 998 (2015). In May, 2009, the plaintiff filed an application for a special use permit and an application to develop an open space subdivision for residential housing on property it owned in Enfield. Id., 450. The commission held a public hearing on the plaintiff's applications on July 9, 2009, July 23, 2009, September 3, 2009, and October 1, 2009, and closed the public hearing on October 1, 2009. Id. On October 15, 2009, the commission met and voted to deny both applications. Id.

The plaintiff filed an appeal with respect to each application (zoning appeals). In its appeals, the plaintiff alleged that "the commission illegally and arbitrarily predetermined the outcome of each of its applications prior to the public hearing and was motivated by improper notions of bias and personal animus when it denied each of the applications." Id., 450–51.

Following a trial, the court, *Hon. Richard M. Rittenband*, judge trial referee, "found that the plaintiff's allegations of bias and ex parte communication arose from the actions of [the defendant], a member of the commis-

sion. More specifically, the court found that [the defendant] took part in the hearing on the plaintiff's applications, played a significant role in the deliberations, and voted to deny the plaintiff's applications. [The defendant] had been a social friend of one of the plaintiff's owners, Jeannette Tallarita, and her husband, Patrick Tallarita . . . . There was a falling out among the friends, and the court found that [the defendant] was biased against Patrick Tallarita, who represented the plaintiff at the hearing before the commission. *The court also found that [the defendant] engaged in an ex parte communication regarding the applications.*" (Emphasis added; footnote omitted.) Id., 451.

The court found two instances of conduct by the defendant that gave rise to the plaintiff's claim of bias against her, only one of which was relevant to the zoning appeals. Id., 451. In the incident described by the court, the defendant had stated that "she wanted [Patrick Tallarita] to suffer the same fate of denial by the commission that she had suffered." (Internal quotation marks omitted.) Id., 452. "At trial, Anthony DiPace testified that [the defendant] had stated to him that the commission, when it previously considered an application that she had submitted, had 'screwed her' and treated her unfairly when it denied that application. She was unhappy with [Patrick] Tallarita, who was then mayor, because he did not intervene on her behalf. She stated in the presence of DiPace that she wanted [Patrick] Tallarita to suffer the same fate, i.e., that the commission deny the plaintiff's applications. [Patrick] Tallarita did not become aware of [the defendant's] statement regarding the fate of the plaintiff's applications until after the commission had closed the public hearing [on the plaintiff's applications]. The court found that [the defendant's] comments were blatantly biased [against Patrick] Tallarita and should not be tolerated. The court also found that it had not been possible for the plaintiff to bring [the defendant's] comments regarding [Patrick] Tallarita to the attention of the commission because he learned of them after the hearing had closed and the commission had denied the plaintiff's applications.

"Credibility was a deciding factor in the court's decision regarding [the defendant's] ex parte communication. [Patrick] Tallarita, DiPace, and Bryon Meade testified during the trial. The court found each of the men was a credible witness. [The defendant] also testified at trial, but the court found that her testimony was filled with denials of the allegations and concludedthat her 'comments did not ring true.' The court found that Meade, a representative of the Hazardville Water Authority, testified with confidence that [the defendant] had met with him in person regarding the plaintiff's applications during the first week of October, 2009. [The defendant] testified, however, that Meade must have been confused because she met with him regarding another property. The court stated that [the defen-

dant's] testimony was just not credible.

"In addressing the plaintiff's claim that [the defendant] improperly engaged in ex parte communications with Meade, the court noted that '[o]ur law clearly prohibits the use of information by a municipal agency that has been supplied to it by *a party* to a contested hearing on an ex parte basis.' . . . The court found that it was 'clear' that [the defendant] had an ex parte communication with Meade. Once the plaintiff had proven that the ex parte communication had occurred, the burden shifted to the commission to demonstrate that such communication was harmless. . . . The court found that the commission had not met its burden to prove that [the defendant's] ex parte communication was harmless." (Citations omitted; emphasis in original.) Id., 452–53.

The court "reviewed the transcript of the commission's October 15, 2009 meeting when it considered the plaintiff's applications. It found that the transcript was twenty-three pages long and that [the defendant's] comments appeared on every page but one, and that on most pages, [the defendant's] comments were the most lengthy. Her comments raised many negative questions about the plaintiff's applications. Moreover, in offering her comments, she cited her experience as an appraiser. The court found that [the defendant] dominated the meeting and that she intended to have a major effect on the commission's deliberations and subsequent votes. The court found clear and egregious bias on [the defendant's] part, and that her impact on the commission's deliberations and votes alone were reason to sustain the plaintiff's appeals." (Footnote omitted.) Id., 453–54.

Judge Rittenband concluded that, "on the basis of the bias [the defendant] demonstrated against the plaintiff and *her ex parte communication with Meade,* along with her biased, aggressive, and vociferous arguments against the applications on October 15, 2009, the commission's action was not honest, legal, and fair. The court therefore sustained the plaintiff's appeals and remanded the matter to the commission for further public hearings . . . ." (Emphasis added.) Id., 455. The commission appealed, and this court affirmed the judgments of the trial court. Id., 467. The commission's appeals to our Supreme Court were dismissed. *Villages, LLC* v. *Enfield Planning & Zoning Commission,* 320 Conn. 89, 127 A.3d 998 (2015).

The plaintiff commenced the present action on October 1, 2012. The two count complaint against the defendant alleged intentional fraudulent misrepresentation[2] and intentional tortious interference with business expectancy.[3] The plaintiff alleged that it owns land in Enfield and that it had filed certain applications with the commission, seeking to develop the land. At all times relevant, the defendant was a member of the

commission and *engaged in ex parte communication with respect to the plaintiff's applications*, yet participated in the public hearing in which the commission denied the plaintiff's applications.

The defendant denied the material allegations of the complaint and alleged three special defenses as to each count, including that the action was barred by the doctrines of governmental immunity and absolute immunity. The plaintiff denied each of the special defenses.

In December, 2013, the defendant filed a motion that the court either dismiss the plaintiff's cause of action or render summary judgment in her favor. Only the motion to dismiss is relevant to this appeal.[4] In her memorandum of law in support of the motion to dismiss, the defendant argued that she was entitled to absolute immunity because she was acting in an administrative capacity and performing a quasi-judicial function when she reviewed and voted on the plaintiff's applications. Nonetheless, she recognized the case of *Towne Brooke Development, LLC* v. *Fox*, Superior Court, judicial district of Danbury, Docket No. CV-03-0347962-S (November 26, 2004), in which the trial court, *Hon. Howard J. Moraghan*, judge trial referee, concluded that the defendant members of the commission were not entitled to absolute immunity because their alleged misconduct involved an ex parte discussion.[5]

On January 13, 2014, the plaintiff filed an objection to the defendant's motion in which it contended that neither qualified immunity, governmental immunity, nor absolute immunity barred its claims against the defendant given the intentional nature of her alleged misconduct and that the allegations of its complaint were predicated on Judge Rittenband's findings in the zoning appeals.[6] With respect to the defendant's special defense that, as a municipal officer exercising discretion, she was immune from suit, the plaintiff countered that § 52-557n (c) applied to the facts alleged, emphasizing the statute's final sentence, to wit: "*The provisions of this subsection shall not apply if such damage or injury was caused by the reckless, wilful or wanton misconduct of such person.*" The plaintiff, therefore, argued that on the basis of Judge Rittenband's findings in the zoning appeals, the defendant was not entitled to immunity from suit.

With respect to the doctrine of absolute immunity, the plaintiff cited and quoted from decisions of our Supreme Court regarding the historical development, purpose, and policy foundations of absolute immunity, including instances in which it did not apply.[7] The plaintiff summarized its position with respect to immunity by stating that its claims were not based on the words the defendant uttered during the commission's meeting at which its applications were denied, but on the defendant's ex parte gathering of evidence, which deprived it of a fair hearing. The plaintiff argued that its intentional

fraudulent misrepresentation claim was grounded on the defendant having falsely represented herself to be "an honest, fair and unbiased member of the commission when she chose to participate in the proceedings on the [plaintiff's] applications." As to the second count, intentional tortious interference with business expectancy, the plaintiff claimed that by participating as a biased decision maker and gathering evidence outside the record, the defendant intentionally and tortiously interfered with the plaintiff's expectancy that the commission would provide a fair, neutral, and honest proceeding with respect to its applications.

Following oral argument, the trial court, *Wiese, J.*, issued a memorandum of decision on May 7, 2014, in which it granted the defendant's motion to dismiss, but declined to address the motion for summary judgment on the ground that the court lacked subject matter jurisdiction. In rendering its decision, the court first determined that the commission is a quasi-judicial body because it is authorized to hear, consider, and decide applications for special permits or exceptions in the exercise of its discretion.[8] See *Kelley* v. *Bonney*, 221 Conn. 549, 567, 606 A.2d 693 (1992). The court noted that our Supreme Court has held that zoning boards act in a quasi-judicial capacity when passing upon the issuance of a permit. See *Astarita* v. *Liquor Control Commission*, 165 Conn. 185, 189, 332 A.2d 106 (1973). The court concluded that the commission was acting in a quasi-judicial capacity when it considered the plaintiff's applications and, therefore, its members were protected by the litigation privilege, a subset of absolute immunity. Relying on *Kelley* v. *Bonney*, supra, 565–66, which noted that the litigation privilege attaches to relevant statements made in administrative proceedings that are quasi-judicial in nature, the court reasoned that the role of zoning commission members, when acting on permit applications, is similar to that of judges.[9]

We disagree that the litigation privilege is applicable to the allegations of the plaintiff's complaint. As the plaintiff made clear in its memorandum of law in opposition to the defendant's motion to dismiss and on appeal, its claims are not predicated on what the defendant *stated* at the commission meeting, but on her bias and ex parte communication with Meade. Although the plaintiff referred to and quoted § 52-557n (c) in the trial court, the court did not consider the statute when it dismissed the plaintiff's cause of action.

The plaintiff appealed, claiming that the court erred in determining that it lacked subject matter jurisdiction because: (1) § 52-557n (c) abrogated the common-law doctrine of absolute immunity, and (2) the defendant's liability is grounded on her internal bias and ex parte communication.[10] Although we agree that the court erred in dismissing the plaintiff's cause of action, we do not agree that the statute abrogated common-law

absolute immunity. The defendant argues that she is entitled to absolute immunity because the commission is a quasi-judicial board; we disagree. Section 52-557n (c) provides members of municipal agencies with qualified immunity in that commission members may be liable for their intentional wrongful acts. Absolute immunity and the litigation privilege are not implicated by the allegations of the plaintiff's complaint. The court and the defendant have conflated the immunity provided to those who make statements before quasi-judicial boards and the immunity provided to members of municipal agencies for exercising their decision-making responsibilities.[11]

"The standard of review for a court's decision on a motion to dismiss . . . is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Dayner* v. *Archdiocese of Hartford*, 301 Conn. 759, 774, 23 A.3d 1192 (2011).

The plaintiff claims that the court improperly determined that the defendant is absolutely immune from suit because § 52-557n (c) provides commission members with qualified immunity and, therefore, commission members are liable for their intentional wrongful acts, and the defendant claims that she is afforded absolute immunity pursuant to the litigation privilege. The parties' claims involve two distinct legal doctrines. To highlight the distinction between the litigation privilege that pertains to *statements made* during judicial or quasi-judicial proceedings and the applicability of § 52-557n (c) to the *decision-making responsibilities* of members of a municipal agency, we provide a brief overview.

The litigation privilege developed centuries ago in the context of defamation claims. See *Simms* v. *Seaman*, 308 Conn. 523, 531, 69 A.3d 880 (2013). The privilege evolved, in part, to protect lawyers from civil actions for words spoken during the course of legal

proceedings. Id., 533–34. "Absolute immunity for defamatory *statements* made in the course of judicial proceedings has been recognized by common-law courts for many centuries and can be traced back to medieval England." (Emphasis added.) Id., 531. "The rationale articulated in the earliest privilege cases was the need to bar persons accused of crimes from suing their accusers for defamation." Id.

Connecticut has long recognized the litigation privilege, and our Supreme Court has stated that the privilege "extends to judges, counsel and witnesses participating in judicial proceedings." (Internal quotation marks omitted.) Id., 537, quoting *Blakeslee & Sons* v. *Carroll*, 64 Conn. 223, 232, 29 A. 473 (1894), overruled in part on other grounds, *Peytan* v. *Ellis*, 200 Conn. 243, 510 A.2d 1337 (1986).[12] In *Blakeslee & Sons*, our Supreme Court explained that the privilege was "founded upon the principle that in certain cases it is advantageous for the public interest that persons should not be in any way fettered in their statements, but should speak out the whole truth, freely and fearlessly." (Internal quotation marks omitted.) *Blakeslee & Sons* v. *Carroll*, supra, 232.

"It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for the publication of the privileged *statement* even if the statement is false and malicious." (Citation omitted; emphasis added; internal quotation marks omitted.) *Gallo* v. *Barile*, 284 Conn. 459, 465–66, 935 A.2d 103 (2007). "[L]ike the privilege which is generally applied to pertinent *statements* made in formal judicial proceedings, an absolute privilege also attaches to relevant *statements* made during administrative proceedings which are quasi-judicial in nature." (Emphasis added; internal quotation marks omitted.) *Mercer* v. *Blanchette*, 133 Conn. App. 84, 90, 33 A.3d 889 (2012). "Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial . . . proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit." (Internal quotation marks omitted.) *Gallo* v. *Barile*, supra, 466. What this brief history demonstrates is that the litigation privilege applies to *statements* made during the course of a judicial or quasi-judicial proceeding.

As to the defendant's claim that she is entitled to absolute immunity,[13] "[i]t is a long-standing doctrine that a judge may not be civilly sued for judicial acts he [or she] undertakes in his [or her] capacity as a judge. The rationale is that a judge must be free to exercise his [or her] judicial duties without fear of reprisal,

annoyance or incurring personal liability. . . . Absolute immunity, however, is strong medicine. . . . The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. . . .

"The officers to whom the absolute protections of judicial immunity extends is limited. This fact reflects an [awareness] of the salutary effects that the threat of liability can have . . . as well as the undeniable tension between official immunities and the ideal of the rule of law . . . . The protection extends only to those who are intimately involved in the judicial process, including judges, prosecutors and judges' law clerks. Absolute judicial immunity, however, does not extend to every officer of the judicial system. . . . Moreover, it is important to note that even judges do not enjoy absolute immunity for administrative as opposed to judicial actions. . . . The determination is made using a functional approach. . . . [I]mmunities are grounded in the nature of the function performed, not the identity of the actor who performed it." (Citations omitted; internal quotation marks omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 630–32, 749 A.2d 630 (2000).

In 1923, the Connecticut legislature enacted zoning legislation. See *Coombs* v. *Larson*, 112 Conn. 236, 238, 152 A. 297 (1930) (c. 279, § 1, of the 1923 Public Acts authorized eight cities and towns to appoint zoning commissions). It has been determined that a zoning board acts in a quasi-judicial capacity and "its decisions are reached only after the presentation of evidence deemed to warrant such action." *Burr* v. *Rago*, 120 Conn. 287, 292, 180 A. 444 (1935). In the case of *Kelley* v. *Bonney*, supra, 221 Conn. 549, our Supreme Court delineated several factors to be used to determine whether a proceeding is quasi-judicial in nature. Significant among the factors in the present case are "whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; [or] (5) examine witnesses and hear the litigation of the issues on a hearing . . . ." Id., 567.

Our Supreme Court has stated that "[h]ow best the purposes of zoning can be accomplished in any municipality is primarily in the discretion of its zoning authority; that discretion is a broad one; and unless it transcends the limitations set by law its decisions are subject to review in the courts only to the extent of determining whether or not it has acted in abuse of that discretion." *Bartram* v. *Zoning Commission*, 136 Conn. 89, 96, 68 A.2d 308 (1949). "Courts cannot set aside the decision of public officers in such a matter unless compelled to the conclusion that it has no foundation in reason and is a mere arbitrary or irrational

exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." (Internal quotation marks omitted.) *St. Patrick's Church Corp.* v. *Daniels*, supra, 113 Conn. 136. As previously stated, zoning boards and their members are to be "accorded the benefit of a presumption that they act fairly, with proper motives and upon valid reasons, and not arbitrarily." Id., 139. This decisional history reveals that there are limits to the discretion of a zoning board. The legislature codified the limits of a zoning board member's discretion in § 52-557n (c).

Section 52-557n (c) provides in relevant part: "Any person who serves as a member of any . . . commission . . . of a municipality and who is not compensated for such membership . . . shall not be personally liable for damage or injury occurring on or after October 1, 1992, resulting from any act, error or omission made in the exercise of such person's policy or decision-making responsibilities on such . . . commission . . . *if such person was acting in good faith*, and within the scope of such person's official functions and duties, and was *not acting in violation of any state*, *municipal or professional code of ethics* regulating the conduct of such person . . . . *The provisions of this subsection shall not apply if such damage or injury was caused by the reckless*, *wilful or wanton misconduct of such person*." (Emphasis added.)

On the basis of the plain language of the statute; see General Statutes § 1-2z; we conclude that that § 52-557n (c) affords qualified immunity, rather than absolute immunity, because it expressly excepts from its purview any conduct that is not undertaken in good faith, that is in violation of any state, municipal or professional code of ethics, or that is reckless, wilful or wanton. Cf. *Chadha* v. *Charlotte Hungerford Hospital*, 77 Conn. App. 104, 113–14, 822 A.2d 303 (2003), aff'd, 272 Conn. 776, 865 A.2d 1163 (2005).[14] The language clearly expresses the legislature's intent that those whose conduct or status puts them within the purview of § 52-557n (c) should be provided protection from liability, but that the protection should be limited or qualified.

The defendant has pointed out that the legislative history of § 52-557n (c) indicates that the purpose of the statute is to protect uncompensated commission members from liability for damages arising out of their decision-making responsibilities and thereby encourage volunteer participation on municipal boards and commissions. In support of her position, the defendant has quoted the legislative history as it is contained in *Stone* v. *Newtown*, Superior Court, judicial district of Fairfield, Docket No. CV-01-0381241 (July 5, 2002) (32 Conn. L. Rptr. 445).[15] Although we agree with the defendant that the legislature's stated purpose for No. 92-198 of the 1992 Public Acts was to encourage citizen participa-

tion on municipal boards, it does not provide absolute immunity. By its terms, the immunity the statute provides does not apply to reckless, wanton, and wilful misconduct, conduct performed in bad faith, or ethical violations.[16] The language of § 52-557n (c) clearly excepts such conduct from the scope of immunity otherwise granted by it.[17]

In its complaint, the plaintiff alleged that the defendant engaged in ex parte communication with respect to its applications. "Our law clearly prohibits the use of information by a municipal agency that has been supplied to it by *a party* to a contested hearing on an ex parte basis. While proceedings before [municipal agencies] are informal and are conducted without regard to the strict rules of evidence . . . nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. . . . Due process of law requires that the parties involved have an opportunity to know the facts on which the [agency] is asked to act, to cross-examine witnesses and to offer rebuttal evidence. The [agency] could not properly consider additional evidence submitted by [a party] after the public hearing without providing the necessary safeguards guaranteed to [an opposing party] and to the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. . . . Not to do so would deny those [supporting or] opposing the application the right to be fully apprised of the facts on which the [agency] is asked to act." (Citations omitted; internal quotation marks omitted.) *Norooz* v. *Inland Wetlands Agency*, 26 Conn. App. 564, 569–70, 602 A.2d 613 (1992). Given the allegations of wrongdoing the plaintiff leveled against the defendant—alleged on the basis of Judge Rittenband's findings in the plaintiff's zoning appeals[18]—Judge Wiese was bound by § 52-557n (c) when ruling on the defendant's motion to dismiss.[19]

For the foregoing reasons, we conclude that § 52-557n (c) pertains to whether the Superior Court has jurisdiction to adjudicate the allegations in the plaintiff's complaint. The trial court in the present case, therefore, improperly dismissed the plaintiff's cause of action for lack of subject matter jurisdiction when it concluded that the defendant, who had engaged in ex parte communication and was biased against the plaintiff, was protected by the common-law litigation privilege when she participated in the commission's meeting to act on the plaintiff's applications.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] General Statutes § 52-557n (c) provides: "Any person who serves as a member of any board, commission, committee or agency of a municipality and who is not compensated for such membership on a salary or prorated equivalent basis, shall not be personally liable for damage or injury occurring on or after October 1, 1992, resulting for any act, error or omission made

in the exercise of such person's policy or decision-making responsibilities on such board, commission, committee or agency *if such person was acting in good faith, and within the scope of such person's official functions and duties, and was not acting in violation of any state, municipal or professional code of ethics regulating the conduct of such person, or in violation of subsection (a) of section 9-369b or subsection (b) or (c) of section 1-206. The provisions of this subsection shall not apply if such damage or injury was caused by the reckless, wilful or wanton misconduct of such person.*" (Emphasis added.)

[2] In the intentional fraudulent misrepresentation count, the plaintiff alleged, among other things, that the defendant was a member of the commission at the time it considered the plaintiff's applications, played a significant role in the deliberations, and voted to deny the applications. More specifically, the plaintiff alleged that the defendant was egregiously biased against it, which bias "was shown when [*she*] *stated to . . . DiPace that she felt that the . . . commission had treated her unfairly and 'screwed her,' was unhappy with Patrick Tallarita because he did not intervene on her behalf and that she wanted him to suffer the same fate of denial by the commission that she had suffered.*" (Emphasis added.) The plaintiff also alleged that the defendant's bias affected the other members of the commission in that she raised many negative questions about the applications and the facts involved and intended to have a major effect on the deliberations and the subsequent votes at the October 15, 2009 meeting.

The plaintiff further alleged that after the close of the public hearing, but prior to the commission vote on October 15, 2009, the defendant "initiated improper ex parte communications with . . . Meade of the Hazardville Water Company concerning the plaintiff's applications . . . ." She discussed water pressure and fire flows with Meade, but did not disclose to the other members of the board that she had obtained information ex parte by communicating with Meade. The plaintiff alleged that the defendant's *meeting with Meade after the close of the public hearing was improper, prejudicial and unfair.* Due to the defendant's bias demonstrated by her communication with Meade, an honest, legal and fair action by the commission was not made. "[B]y participating in the proceedings on the plaintiff's applications, *in spite of her bias and improper ex parte communication*, [the defendant] continuously intentionally misrepresented to the plaintiff that she was a neutral, honest, fair and unbiased member of the commission." (Emphasis added.) The defendant "knew that her representations that she was a neutral, honest, fair and unbiased member of the commission were false and [she] made these representations to the plaintiff wilfully, wantonly, maliciously and in reckless disregard of the plaintiff's rights."

[3] In the intentional tortious interference with business expectancy count, the plaintiff alleged, among other things, that the defendant, "by participating in the proceedings *in spite of her bias against the plaintiff*, by making biased, aggressive and vociferous arguments against the plaintiff's applications and *by engaging in improper communications ex parte*, and by making fraudulent intentional misrepresentations to the plaintiff, was acting outside the scope of her authority as a member of the . . . commission . . . [and] intentionally and tortuously interfered with the relationship between the plaintiff and the commission and tortuously interfered with the plaintiff's expectation that it was investing time, money, and effort into proceedings that were fair, honest, and legal . . . ." (Emphasis added.)

[4] On January 17, 2014, the plaintiff filed a motion for partial summary judgment as to liability only. The trial court, *Wiese, J.*, declined to address either the defendant's motion for summary judgment or the plaintiff's motion for partial summary judgment on the ground that it lacked subject matter jurisdiction. On appeal, neither party claims that it was improper for the court not to have adjudicated the summary judgment motions.

[5] In *Towne Brooke Development, LLC*, Judge Moraghan denied the defendants' motion for summary judgment because there were genuine issues of material fact as to whether the defendants had acted with malice, wantonness, or an intent to injure, citing *Lapadula* v. *Middletown*, Superior Court, judicial district of Middlesex, Docket No. 67942-S (August 16, 1994) (where alleged misconduct involves malice, wantonness or intent to injure, immunity doctrine cannot be invoked successfully). *Towne Brooke Development, LLC* v. *Fox*, supra, Superior Court, Docket No. CV-03-0347962-S.

[6] In its objection to the defendant's motion, the plaintiff claimed that Judge Rittenband's determinations of fact support the allegations of its complaint and that the defendant is collaterally estopped from relitigating those findings in the present action.

[7] See *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 629, 79 A.3d 60 (2013) (absolute immunity does not bar action alleging improper use of judicial process); *Simms* v. *Seaman*, 308 Conn. 523, 531, 69 A.3d 880 (2013) (doctrine developed to bar defamation claims against participants in judicial proceedings); *Rioux* v. *Barry*, 283 Conn. 338, 343–44, 927 A.2d 304 (2007) (public interest in having people speak freely outweighs risk individual will occasionally abuse privilege by making false statements); *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 787, 865 A.2d 1163 (2005) (communications uttered in course of judicial proceedings absolutely privileged as long as they pertain to subject of controversy); *DeLaurentis* v. *New Haven*, 220 Conn. 225, 263–64, 597 A.2d 807 (1991) (distinguishing between liability for words used in pleadings and vexatious litigation claim brought after unfounded and malicious action).

[8] The plaintiff has not challenged the court's determination that the commission is a quasi-judicial body.

[9] Judge Wiese disagreed with the plaintiff's position that absolute immunity did not apply in the present case due to the intentional nature of the defendant's alleged misconduct, stating that the effect of the litigation privilege is to disallow damages for the publication of a privileged statement, even if the statement is false and malicious. See *Gallo* v. *Barile*, 284 Conn. 459, 466, 935 A.2d 103 (2007). The court examined whether the statements or conduct attributed to the defendant, as alleged in the complaint, are protected by absolute immunity under the litigation privilege, noting, as a matter of law, that the test is "whether the allegedly [false and malicious] statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial [or quasi-judicial] proceeding, so as to qualify for the privilege." (Internal quotation marks omitted.) Id., 467. The court stated that despite *Judge Rittenband's findings in the zoning appeals, which would defeat qualified immunity at the summary judgment stage,* "even intentional and malicious conduct does not defeat absolute immunity." As we conclude in this opinion, absolute immunity is inapplicable in this case because the plaintiff alleged that the defendant engaged in ex parte communication with Meade.

[10] The plaintiff also claimed that the misuse of the judicial system is not protected by the common-law doctrine of absolute immunity, and that the defendant's liability is grounded on her internal bias and ex parte communication, not solely on the statements she made during the subject hearing, and that *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 627 A.2d 909 (1993), approved of tort remedies for the wrongful acts of commission members. Because we conclude that the court improperly granted the defendant's motion to dismiss on the ground of absolute immunity and failed to consider § 52-557n (c), we need not reach the plaintiff's additional claims.

[11] The plaintiff cited *Chadha* v. *Charlotte Hungerford Hospital*, 77 Conn. App. 104, 114, 822 A.2d 303 (2003), aff'd, 272 Conn. 776, 865 A.2d 1163 (2005), to support its position that absolute immunity had been abrogated. In *Chadha*, both this court and our Supreme Court concluded that General Statutes §§ 19a-20 and 19a-17b abrogated common-law absolute immunity with respect to *statements made* in conjunction with quasi-judicial proceedings, such as medical licensure boards and data banks. *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 778–79; *Chadha* v. *Charlotte Hungerford Hospital*, supra, 77 Conn. App. 106. However, the misconduct alleged in the present case is not the defendant's statements, but her bias and ex parte communication with Meade. *Chadha*, therefore, is factually and legally distinguishable from the present case. The statutes at issue in *Chadha* abrogated absolute immunity in favor of qualified immunity with respect to statements submitted to medical licensure boards and data banks.

[12] See *DeLaurentis* v. *New Haven*, 220 Conn. 225, 263 n.22, 597 A.2d 807 (1991).

[13] In her brief, the defendant cited several cases in which absolute immunity barred certain causes of action. Those cases are distinguishable because they do not concern municipal commissions or boards and thus do not fall within the purview of § 52-557n (c), i.e., *Simms* v. *Seaman*, supra, 308 Conn. 523 (attorneys in judicial proceedings); *Rioux* v. *Barry*, 283 Conn. 338, 342, 927 A.2d 304 (2007) (state police internal investigation); *Mercer* v. *Blanchette*, supra, 133 Conn. App. 86, 88 (defamation claim by Department of Correction inmate).

[14] In *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 790, our Supreme Court concluded, on the basis of the plain language of the statutes at issue, that the legislature provided qualified immunity to persons who

make statements to medical boards and data banks when it enacted General Statutes §§ 19a-17b (b) and 19a-20. *Chadha* and those statutes, however, concern the litigation privilege, which is not the issue in the present case.

Section 19a-17b (b) provides in relevant part that "[t]here shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person who provides testimony, information, records, documents, reports, proceedings, minutes or conclusions to . . . any professional licensing board . . . when such communication is intended to aid in the evaluation of the qualifications, fitness or character of a health care provider *and does not represent as true any matter not reasonably believed to be true.*" (Emphasis added.)

Section 19a-20 provides in relevant part that "[n]o member of any board or commission . . . including a member of a medical hearing panel established pursuant to subsection (g) of section 20-8a, and no person making a complaint or providing information to any of such boards or commissions or the Department of Public Health as part of an investigation pursuant to section 19a-14, or a disciplinary action pursuant to section 19a-17, shall, *without a showing of malice*, be personally liable for damage or injury to a practitioner arising out of any proceeding of such boards and commissions or department. . . ." (Emphasis added.)

[15] In *Stone*, the plaintiff sustained injuries in the Newtown town hall when he fell down the stairs. He brought the action against the volunteer members of the Newtown Board of Managers. *Stone* v. *Newtown*, supra, 32 Conn. L. Rptr. 446. The Board of Managers moved to strike all of the counts against it and its individual members on the ground that any action against volunteers was barred by § 52-557n (c). Id. In resolving the motion to strike, the court, *Gallagher, J.*, cited portions of the legislative history of § 52-557n (c):

"The legislative history provides some insight as to the purpose of the statute and how it is expected to apply. Representative Looney . . . stated, '[t]he bill . . . grants immunity from liability to uncompensated members of municipal boards, commissions, committees or agencies when [members are] exercising their policy or decision-making responsibilities and it is something that has been requested because of the fear and concern that certain communities have expressed regarding encouraging volunteerism to serve on boards and commissions in a highly litigious atmosphere in which we now live.' [35] H.R. Proc., [Pt. 16] 1992 Sess., pp. 5383–5384. . . .

"In Senate discussions, Senator Jepsen summed up the bill's purpose stating '[t]his bill grants immunity to unpaid members of municipal boards, commissions, agencies and committees, who in the good faith exercise of their duties allotted to them, make mistakes and I think it will encourage people to serve on a volunteer basis on boards and commissions, a problem that is growing in many municipalities. I think this legislation is long overdue. It should be pointed out that this legislation does not exempt anybody from liability if they violate a professional code of conduct . . . . It merely covers them for good faith mistakes in the exercise as a volunteer of their own discretion on a board or commission or committee.' [35] S. Proc., [Pt. 16] 1992 Sess., pp. 1788." *Stone* v. *Newtown*, supra, 32 Conn. L. Rptr. 446–47.

"Rep. Looney stated that a finding of malicious or reckless behavior would trigger the provisions of [§] 7-101a (b), an indemnity provision which provides protection for the municipal employee from financial loss and expense." (Footnote omitted.) Id., 446.

"Legislative Services Director for the Connecticut Conference [of] Municipalities, Ji[m] Finley, was in support of the passing of the bill and stated, '[o]ur view is that it should be a blanket protection, particularly when you use as a standard, the [person is] acting in good faith and within the scope of such [person's] official functions and duties, unless such a damage or injury caused by the reckless [behavior] . . . or misconduct.' Conn. Joint Standing Committee Hearings, Planning and Development, [Pt. 1] 1992 Sess., p. [90–91]." (Footnotes omitted.) *Stone* v. *Newtown*, supra, 32 Conn. L. Rptr. 447.

Judge Gallagher concluded, on the basis of the legislative history of § 52-557n (c), that it does not bar a cause of action against a volunteer board member. Id.

[16] Although decisions of our trial courts are not binding on this court, we note that at least two trial court decisions have held that common-law absolute immunity is displaced in certain circumstances by § 52-557n (c), which provides qualified immunity for uncompensated members of municipal commissions and boards. See *Towne Brooke Development, LLC* v. *Fox*, supra, Superior Court, Docket No. CV-03-0347962-S (citing § 52-577n [c] as pertinent statute to deny motion for summary judgment for allegations that members of zoning commission engaged in ex parte communication); *Lapadula* v. *Middletown*, Superior Court, judicial district of Middlesex,

Docket No. 67942-S (August 14, 1994) (no immunity when proceedings instituted with malicious intent).

[17] We note that although § 52-557n (c) concerns the immunity afforded persons who serve on municipal commissions and boards in an uncompensated capacity, it is consistent with this jurisdiction's common law regarding the liability of public officials in general. In *Wadsworth* v. *Middletown*, 94 Conn. 435, 439, 109 A. 246 (1920), the court adopted a common-law rule for the discretionary acts of public officials, to wit: public officials who act honestly but commit errors of judgment ought not to be "held responsible for resultant damage; for the decision is one within their discretion, and unless they act maliciously, or wantonly, or in abuse of the discretion vested in them, they ought not to be held liable, and by the weight of authority cannot be held liable."

"Where the discretion has been exercised erroneously but in good faith through an error of judgment, the public official should not be required to pay for damages for his acts. The affairs of government cannot be conducted with absolute exactitude, and public officials cannot be expected to act in all cases with certain judgment. Timidity and doubt would govern their performance of public duty if they acted in the consciousness that personal liability might follow, no matter how closely they followed their best discretion." Id., 440. "The rule which, on the one hand, fairly protects the abutting owner, and, on the other, fairly protects the public official in acting in the line of duty, is that unless he acts maliciously, or wantonly, or in abuse of the discretion vested in him by law, he shall not be subjected to personal liability." Id., 441; see also *Stiebitz* v. *Mahoney*, 144 Conn. 443, 448, 134 A.2d 71 (1957). In *Wadsworth*, the defendant public official who oversaw the cutting of the plaintiff's trees was found liable for the damage because he permitted the plaintiff's property to be destroyed "not through mere error of judgment, but through a failure to exercise not merely reasonable discretion but any discretion." *Wadsworth* v. *Middletown*, supra, 94 Conn. 441.

[18] See footnote 6 of this opinion.

[19] In fact, Judge Wiese found that the findings in the administrative appeal "would almost certainly defeat qualified immunity at the summary judgment stage."